UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Corey Jawan Robinson, | ) | C/A No. 5:16-cv-01876-JMC-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| U/M Ranata Sowell; | ) | |
| A/W Kenneth Sharp, and | ) | |
| Ms. Debt, | ) | |
| | ) | |
| Defendants. | ) | |

This is a civil action filed pro se by a state prison inmate. Pursuant to 28 U.S.C. § 636(b)(1), and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in such pro se cases and to submit findings and recommendations to the district court. *See* 28 U.S.C. §§ 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

I.    Factual Background

Corey Jawan Robinson ("Plaintiff") alleges Defendants have conspired to deny him protective custody at Lee Correctional Institution. Compl. 4-5, 6-7, ECF No. 1. According to Plaintiff, he feels that his life is in danger in the general population and refused to go there, apparently resulting in a disciplinary violation charge and loss of good-time credits. *Id*. Plaintiff acknowledges that he did not file a grievance before filing this case, but asserts that he did not file one because his "life is in danger and [he] need[s] fast results." *Id*. at 11. Plaintiff seeks declaratory and injunctive relief. *Id*. at 8.

II.     Standard of Review

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's pro se Complaint filed in this case. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. §§ 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden*, *Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979).

Pro se complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *De'Lonta v. Angelone*, 330 F.3d 630, 630 n.1 (4th Cir. 2003). Nevertheless, the requirement of liberal construction does not mean that this court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Even under this less stringent standard, the Complaint filed in this case is subject to summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B).

III.     Discussion

Plaintiff's Complaint should be summarily dismissed without service on Defendants because it was filed prematurely, before he fully exhausted his South Carolina Department of Corrections ("SCDC") administrative remedies as required by 42 U.S.C. § 1997e.

In enacting the Prison Litigation Reform Act of 1996 ("the PLRA"), Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended § 1997e so that it now provides, "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The United States Supreme Court held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001); *see Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (prisoners must "properly exhaust" their administrative remedies before coming into court by using all steps available and doing it the way the agency's policy requires); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (exhaustion applies to all kinds of "inmate suits about prison life . . . ."). The Supreme Court has held that the PLRA "seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case,'" *Woodford v. Ngo*, 548 U.S. at 90, and that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. at 218. Several federal courts, including the Fourth Circuit Court of Appeals, have ruled that a prisoner is required to follow the rules established by the prison for its grievance process and to correct any problems with his or her compliance with the process before the prisoner can assert that the process is not available to him. *See, e.g.*, *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (inmate must attempt to cure problems with rejected grievance; compliance with procedures must be "exact and complete"); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)) ("'to exhaust administrative remedies, a person must follow the rules

3

governing filing and prosecution of a claim,' including the prison's rules for filing an appeal"); *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) ("in order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure") (citation omitted). Although the lack of exhaustion of administrative remedies is generally considered an affirmative defense, and not a jurisdictional infirmity, *Jones v. Bock*, 549 U.S.199, 211-12 (2007), in this Circuit, if the lack of exhaustion is apparent from the face of the prisoner's pleadings, sua sponte dismissal prior to service of the complaint is appropriate. *See Anderson v. XYZ Corr. Health Serv.*, 407 F. 3d 674, 683 (4th Cir. 2005).

The lack of exhaustion is clear on the face of Plaintiff's Complaint because he answered "no" to the question on the complaint form about whether he filed a grievance. ECF No. 1 at 10. Plaintiff's assertion that he did not exhaust because his situation is an emergency does not excuse the lack of exhaustion because SCDC has an entire "emergency procedures" section that provides for shortened administrative response times for use specifically when "any person's health, safety, or welfare is threatened or in serious danger," *See* SCDC, Policy/Procedure GA-01.12, § 14 (May 12, 2014), and there is no indication that Plaintiff attempted to utilize the special emergency grievance process before filing this case. Moreover, Plaintiff's failure to exhaust is also not excused, as he asserts, by the fact that he does not request "money damage." ECF No. 1 at 11. The exhaustion requirement applies to any "action" and § 1997e does not limit the exhaustion requirement only to actions seeking damages. *See Arvie v. Stalder*, 53 F.3d 702, 705 (5th Cir. 1995) (exhaustion required in injunctive-relief action); *Colton v. Ashcroft*, 299 F. Supp. 2d 681, 687 (E.D. Ky. 2004) (exhaustion required in declaratory-relief action). In this case, Plaintiff does not allege that he was prevented, through no fault of his own, from availing

4

himself of the grievance process; his failure to fully exhaust the SCDC grievance process with regard to the conditions of his confinement at Lee Correctional Institution before filing this lawsuit is fatal to this case.

Furthermore, even if he had exhausted his administrative remedies, Plaintiff's Complaint would still be subject to summary dismissal because he does not have a constitutional claim relating to his classification for custody purposes. In other words, he has no constitutional right to force SCDC officials to house him in any particular prison or in any particular part of a prison. The South Carolina Code of Laws vests exclusive authority relating to the care and housing of prisoners in the Director of SCDC and places no limitations on official discretion. *See* S.C. Code Ann. §§ 24-1-130, 24-1-140, 24-3-20, 24-3-30. Federal courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control, *see Wolff v. McDonnell*, 418 U.S. 539, 558-62 (1974), and it is well established that there is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Ange v. Paderick*, 521 F.2d 1066 (4th Cir. 1975); *Lyons v. Clark*, 694 F. Supp. 184, 187 (E.D. Va. 1988) (collecting cases). In other words, the placement and assignment of inmates into particular institutions or units by state or federal corrections departments are discretionary functions and, generally, are not subject to review *unless* state or federal law places limitations on official discretion. *Hayes v. Thompson*, 726 F.2d 1015, 1016-17 (4th Cir. 1984) (collecting cases).

It is known from other cases previously decided in this judicial district that South Carolina law confers no protected liberty interest upon SCDC inmates from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a

5

prison. *See*, *e.g.*, *Keeler v. Pea*, 782 F. Supp. 42, 43-44 (D. S.C. 1992) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)); *Vice v. Harvey*, 458 F. Supp. 1031, 1034 (D.S.C. 1978); *Sheffield v. Edwards*, No. 9:07-3550-JFA-GCK, 2008 WL 4200442 (D.S.C. Sept. 3, 2008). In fact, it is well settled that the placement of inmates into administrative segregation units or similar units is a valid of means of minimizing a "threat to security of the institution, threat to the safety of other residents or Jail staff, etc." *Jackson v. Bostick*, 760 F. Supp. 524, 528 (D. Md. 1991); *see Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("The transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."); *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1312 (9th Cir. 1995) (prison officials have legitimate penological interest in administrative segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"); *see also Montanye v. Haymes*, 427 U.S. 236, 242 (1976) (if a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight"). Because Plaintiff was committed to the custody SCDC, the choices of where and how Plaintiff is to be confined are to be determined by SCDC. Although Plaintiff apparently would prefer to be placed in another section of the Lee Correctional Institution or at a completely different prison, his current classification and placement at Lee has not violated his federally guaranteed constitutional rights. *See Wolff v. McDonnell*, 418 U.S. at 558-62; *Mann v. Leeke*, 73 F.R.D. 264, 265-267 (D.S.C. 1974); *Ramey v. Hawk*, 730 F. Supp. 1366, 1372 (E.D.N.C. 1989); *see also Cooper v. Riddle*, 540 F.2d 731, 732 (4th Cir. 1976) (*citing Meachum v. Fano*: federal courts are not "to assume the role of super wardens of state penal institutions").

IV.     Recommendation

Accordingly, it is recommended that the district court dismiss the Complaint in this case *without prejudice*. *See Brown v. Briscoe*, 998 F.2d 201, 202-04 (4th Cir. 1993); *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

IT IS SO RECOMMENDED.

June 21, 2016                                                                   Kaymani D. West
Florence, South Carolina                                              United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 2317**
> **Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).